[Civ. No. 8249. First Appellate District, Division Two.—April 12, 1932.]

HERCULES GASOLINE COMPANY (a Corporation), Respondent, v. SECURITY INSURANCE COMPANY, (a Corporation), Appellant.

W. I. Gilbert for Appellant.

John M. Hall for Respondent.

JAMISON, J., *pro tem.*—This action was brought to reform a contract for insurance and upon such reformation for judgment for $6,402.50 and costs amounting to $38.50. Judgment was rendered in favor of plaintiff and against defendant reforming said contract and for said sums with accrued interest and costs of suit. From this judgment defendant has appealed.

It appears from the evidence that in the years of 1924 and 1925 respondent was engaged in the business of refining and marketing gasoline and petroleum products in the county of Los Angeles and vicinity and that in carrying on said business it owned and operated in Los Angeles County and vicinity a fleet of motor vehicles, including trucks, tank wagons and tank trailers.

On April 17, 1924, appellant issued to respondent its policy of insurance, effective for one year, covering this fleet of motor vehicles. Prior to November, 1924, respondent owned two trailers, both of them being known as "Utility" trailers. In November, 1924, respondent exchanged one of these Utility trailers for a Hercules trailer No. 1247. After this exchange until the time of the accident, which gave rise to this action, respondent continued to own these two trailers, they being the only trailers owned by respondent, one of them being a "Utility" and the other a "Hercules", and it was the Hercules that was involved in the accident.

H. C. Johnson, a witness for respondent, testified that he was an insurance broker and that he handled insurance matters for respondent. That in April, 1925, and prior to the expiration of the first policy he, in company with M. J. Cramer, called at the office of appellant for the purpose of procuring a new policy covering said motor vehicles in place of the one, the first policy, which expired on April 17, 1925.

At the office of appellant he interviewed Roy Oliphant, who was the underwriter and manager of appellant's business, and informed him that respondent desired to renew the said policy. Witness requested Oliphant to have the said

vehicles carefully inspected before rewriting the policy, stating that there perhaps had been changes and that he desired the policy correctly written. The said Oliphant told witness that he would have all of the motor vehicles covered by the policy inspected. Witness Cramer corroborated this testimony of Johnson and further testified that Oliphant told Johnson that he would be pleased to have the policy written and he would send a man out at once to check the said motor vehicles so that there would be no mistakes in the policy.

Thereafter on April 17, 1925, the policy was duly issued and was mailed to Johnson and by him transmitted to respondent. This policy describes the motor vehicles, each of them being described in a separate rider or coverage indorsement. Two of these riders, Nos. 47 and 48, described two Utility 4½-ton trailers, factory No. 100–1–T. In rider 47 the year of the model is given as 1918, in rider 48 the model year is left blank.

On July 19, 1925, the Hercules trailer became stuck in the mud and in attempting to remove it, the gasoline it carried exploded and this trailer and a Pierce Arrow truck were damaged. The fire from this gasoline also caused damage to persons and property in the vicinity.

Respondent was thereupon sued for the damage caused by this explosion and fire and it called upon appellant to defend the actions and to bear the loss to the extent of the limitations of liability under the policy. The defendant refused to do this, claiming that the loss occasioned by said explosion and fire was not covered under any vehicle described in said policy.

Respondent thereupon defended the several actions and settled same as follows: Settlement of claims on account of personal injuries and destruction of property $4,600; attorney's fees and costs arising from said actions, $1302.50. In addition to this loss caused by said explosion and fire, respondent expended the sum of $500 in repairing the said Hercules trailer.

Appellant concedes that a court of equity has the right to reform a written instrument where by fraud or mutual mistake of the parties the instrument fails to contain the matters originally agreed upon. But it contends that the findings are not supported by the evidence and that the

evidence is insufficient to support the findings, the conclusions of law and the judgment.

The court found that a short time prior to expiration of the first policy respondent entered into negotiations with appellant for the issuance of a similar policy to cover all of its motor vehicles, and during the course of these negotiations appellant represented to respondent that it would make a careful check of all said vehicles for the purpose of obtaining a list and description of same to be set forth and described in said second policy. That contrary to said representation the coverage indorsements to said second policy did not set forth and describe said Hercules trailer, but did describe two Utility trailers, both of which were described as Utility trailers 4½-ton factory No. 100–1–T. That this policy was prepared by appellant at its own office, without consultation with respondent. That through the inadvertence and mistake of appellant the policy erroneously described a Utility 4½-ton trailer instead of said Hercules trailer. That it was the intention of appellant and respondent that said policy should contain and describe the Hercules 4½-ton trailer, and that its omission from said policy was the result of a mutual mistake. That said mistake was not known to or discovered by either appellant or respondent until after the accident on July 19, 1925.

Appellant is correct in the statement that the rights of respondent are fixed and determined by the provisions of section 3399 of the Civil Code, which is as follows: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

In the case now under consideration the court found that the failure to set forth and describe the Hercules trailer was caused by the mutual mistake of appellant and respondent. There is a decided conflict in the evidence regarding just what representations were made by appellant's manager during the negotiations for this second policy. Roy Oliphant, testifying on behalf of appellant,

denied that he had made the representations which said witnesses Johnson and Cramer claimed he had made them.

C. R. Bird, the general superintendent of respondent, and witnesses Johnson, also testified that shortly after the accident they had a conversation with J. J. Bird, the claim superintendent of appellant, relative to the loss thereby incurred, and in the conversation Bird told them to have the Hercules trailer repaired and repainted and send the bill for same to appellant; that the mistake regarding the trailer was a typographical error that had been caused by both respondent and appellant. Bird denied that any such conversation occurred.

In the case of *Home & Farm Co.* v. *Freitas,* 153 Cal. 680 [96 Pac. 308, 310], the court said: "The only question upon this point is whether there was such mutuality in the mistake as to authorize a court of equity to correct it. But in this connection it is to be remembered, as was said by this court in *Sullivan* v. *Moorhead,* 99 Cal. 157 [33 Pac. 796], that while to justify a court of equity in decreeing the reformation of a written instrument on the ground of mistake, the proof of the mistake must be clear, convincing and satisfactory to the court, 'yet a mere conflict of testimony as to the mistake does not necessitate a denial of the relief (*Hutchison* v. *Ainsworth,* 73 Cal. 452 [2 Am. St. Rep. 823, 15 Pac. 82]; *Wilson* v. *Moriarity,* 88 Cal. 211 [26 Pac. 85]), and the decision of the trial court upon such conflict of evidence is conclusive upon this court'."

The evidence upon the part of respondent establishes a clear case of mutual mistake in leaving out of said second policy the Hercules trailer. ▪ Nor does the fact that the agents and officers of respondent failed to read said policy militate against it. Respondent was assured by appellant that its motor vehicles would be checked so that a correct description of each of them would be set forth in the policy. Respondent relied upon this representation and its failure to read the policy does not prevent its reformation. (*California Packing Co.* v. *Larsen,* 187 Cal. 610 [203 Pac. 102]; *Sullivan* v. *Moorhead,* 99 Cal. 157 [33 Pac. 796]; *Travelli* v. *Bowman,* 150 Cal. 587 [89 Pac. 347]; *Cantlay* v. *Olds & Stoller Inter-Exchange,* 119 Cal. App. 605 [7 Pac. (2d) 395].)

The facts in the case of *Bank of Fruitvale* v. *Fidelity & Casualty Co. of New York*, 35 Cal. App. 666 [170 Pac. 852], cited by appellant, are not similar to those of the instant case. In that case plaintiff desired a policy that would protect it against loss by robbery, such loss to be covered on Saturdays up to 9 o'clock P. M. No assurance was given that the policy would be so written. The policy was issued covering loss on Saturdays up to 8:30 P. M. only. Under these circumstances it was held that while plaintiff would have been justified in refusing to accept the policy the facts were far from constituting fraud or mistake, mutual or otherwise, so as to authorize its reformation. Appellant contends that there is no evidence that respondent relied upon the representations of Oliphant, its business manager, who stated to Johnson and Cramer that he would have a careful check of all respondent's motor vehicles made so there would be no mistake in the policy. If reliance upon these representations is a fact necessary to be proven in this case, it would seem that the acceptance of the policy by respondent without first reading it over and checking each vehicle would be some evidence at least that these representations were relied upon.

There is no evidence that the Hercules trailer created a greater risk than a Utility would have created, nor that the appellant would not have as readily insured it as they would have insured a Utility trailer.

We are of the opinion that the findings are supported by the evidence and that the court committed no error in denying the motions for a nonsuit, and for a new trial.

The judgment is affirmed.

Spence, Acting P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 12, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 9, 1932.