[Civ. No. 8753. First Appellate District, Division One.—February 14, 1933.]

J. B. PAYNE, Respondent, v. CALIFORNIA UNION FIRE INSURANCE COMPANY, Appellant.

Lee A. Solomon for Appellant.

J. E. Stillwell, Robert E. Austin and John N. Helmick for Respondent.

COMSTOCK, J., *pro tem.*—This action was brought to reform a contract for fire insurance and to recover a money judgment for a fire loss alleged to have been sustained by plaintiff and to have been covered by the contract. Judgment went for the plaintiff and the defendant has appealed therefrom.

It appears from the evidence that plaintiff was the owner of several parcels of real estate in and about Los Angeles. One of these was a frame building with composition roof, about 137 feet long by 20 feet wide, situated at No. 127 Venice Boulevard, Venice, California, occupied at the time of the issuance of the insurance policy in question herein by a tenant of the plaintiff's for dwelling purposes, and also used as a garage and for the storage of various materials.

Defendant maintained an office at Palms, in the county of Los Angeles, with one George W. Schilling as its agent in charge thereof. Said agent was duly authorized to contract for, execute and issue policies of fire insurance for defendant. The plaintiff owned a policy of fire insurance covering the said building, which policy was about to expire. The said Schilling had written many fire insurance policies for plaintiff upon his various properties and plaintiff was desirous of having him issue one on the property here involved. Schilling was quite familiar with the property, having visited it and passed by it on numerous occasions, and having it listed for sale or exchange as a real estate broker. A few days prior to the expiration of the old policy, plaintiff took it to Schilling and told him he wanted it renewed, leaving the old policy with him as had been his custom in connection with many other policies which said agent had issued to him under similar circumstances. Several days after placing the order for the new policy, plaintiff called at Mr. Schilling's office, found the policy ready for him and took it home with him, where he filed it among other insurance policies. This policy was dated August 4, 1928, and covered for a period of three years from that date. The amount of the coverage was $1500 and the premium charged by the company and paid by plaintiff was $10.50.

On June 9, 1929, a fire occurred in the premises, damaging them to the amount of $400. Plaintiff without delay presented his written proof of loss to defendant and claimed reimbursement to the extent of his damage, but defendant denied liability on the ground that "the building was not located or occupied for the purpose stated in the policy and that the proper rate was not charged for the insurance as written".

After the fire the plaintiff for the first time discovered that the policy had been written erroneously, describing the property as located at "127 Victoria Avenue, Venice, California", instead of 127 Venice Boulevard, and as a "composition roof frame building and its additions (if any) communicating and in contact therewith, while occupied only for dwelling house purposes", instead of as a composition roof frame building used as a dwelling and as a garage and as a place of storage of various materials. Plaintiff had never owned any property on a street known as Victoria Avenue. The agent knew the location and description of the property to be insured. The error was wholly made in his office. Plaintiff did not read the policy, but relied upon defendant's agent to properly describe the property.

The foregoing facts appear without substantial conflict. There was testimony by Edward Hicks Beach, an employee in Mr. Schilling's office, to the effect that he did the clerical work of writing the policy and that Mr. Schilling had told him the property was at 127 Victoria Street. He stated that he had gone with Mr. Schilling's partner to look at the property and had found a street near Venice called Victoria Drive or Victoria Avenue, but had been unable to find a number "127" or to locate plaintiff's property; that after returning to the office he called Mr. Payne by telephone and asked him if the property was 127 Victoria Avenue; that he did not remember what Mr. Payne's answer was, nor whether it was Mr. Schilling or Mr. Payne who told him the building was a dwelling, but he did not think Mr. Payne made any statement as to what kind of building it was that he wanted insured. Upon the subject of this conversation, Mr. Payne testified that he had told Mr. Beach he thought the street upon which the property was located was formerly Virginia Avenue, but that it was now Venice, and had referred him to the old policy and had stated he did not know the number.

The first point made for reversal is stated by appellant as follows: "The third paragraph of the findings is not supported by the evidence inasmuch as the said building was not at any time used as a dwelling house within the meaning of the insurance policy and the warranty in

the policy that it was used as a dwelling was untrue and the policy was, therefore, void.''

The said third paragraph of the findings determines it to be true "That said building is and was at the time mentioned in the pleadings herein used as a dwelling and as a garage and as a place of storage of various materials." Without going into the evidence in detail, suffice it to say that we find it amply sufficient to support this finding as to the character of the use which was being made of the property. Appellant quotes in its brief sufficient of the evidence to establish this. · But the real point which appellant seeks to make apparently is that the statement in the policy as issued, that the premises were used only for dwelling-house purposes, constituted a warranty that the property was as described, which, if untrue, would avoid the policy. The gist of plaintiff's action is that the parties actually contracted for the insurance of the property at 127 Venice Boulevard used as a dwelling and as a garage and place of storage for various materials, but that through error the policy was not written as intended. It is plain, then, that if the findings of the lower court are supported by the evidence in regard to the mistake and the judgment of reformation can be upheld, appellant's first point has no application, for in such case only the contract as written contains the . alleged untrue warranty, but as reformed it correctly describes the property and there remains no room for the contention.

We pass to a consideration of the second question presented by the appeal, which appellant states as follows: "If there is a misstatement of a warranty material to the risk, can the plaintiff, as the party insured, avoid the effect of the misstatement by showing that it was inserted by an agent of the company, and that he did not discover it until after the loss occurred, nothing having been done by the company or its agent to prevent a reading of the policy?" This is hardly a clear or concise statement of the question. Manifestly, the real point is whether there was anything in plaintiff's failure to read the policy under the circumstances of this case which militates against his urging the mistake and asking for a revision of the contract. It has frequently been held that the mere failure to read an insurance · policy does not militate against its

reformation upon the ground of mutual mistake. An enlightening case on this subject is that of *Hercules Gasoline Co.* v. *Security Ins. Co.*, 122 Cal. App. 499 [10 Pac. (2d) 128]. In that case certain motor vehicles and trailers had been insured. While a policy was in force, the insured exchanged a trailer covered therein for another of different name and description. Prior to the expiration of the policy the insurer and the insured entered into negotiations for the issuance of a policy to cover all of the latter's motor vehicles, and during the course of these negotiations the insurer undertook to make a careful check of all the vehicles to be covered so as to obtain a correct description of them for use in the new policy. The policy was prepared in the office of the insurer without consultation with the insured. Through a mistake upon the part of the insurer the policy erroneously described a Hercules trailer as a Utility trailer, this latter being the name of the trailer previously insured and described in the old policy. It was the intention of both the insurer and the insured to have the policy describe the Hercules trailer and the omission of it from the policy was the result of mutual mistake. The insured received the policy as issued and retained it. The mistake was not known or discovered until after an accident which became the basis of a claim under the policy. The action was one to reform the policy upon the ground of mutual mistake and to recover upon it as reformed. In commenting upon the very question now before us, the court, in deciding the case, said at page 503: "The evidence upon the part of respondent establishes a clear case of mutual mistake in leaving out of said second policy the Hercules trailer. Nor does the fact that the agents and officers of respondent failed to read said policy militate against it. Respondent was assured by appellant that its motor vehicles would be checked so that a correct description of each of them would be set forth in the policy. Respondent relied upon this representation and its failure to read the policy does not prevent its reformation. (*California Packing Co.* v. *Larsen,* 187 Cal. 610 [203 Pac. 102]; *Sullivan* v. *Moorhead,* 99 Cal. 157 [33 Pac. 796]; *Travelli* v. *Bowman,* 150 Cal. 587 [89 Pac. 347]; *Cantlay* v. *Olds & Stoller Inter-Exchange,* 119 Cal. App. 605 [7 Pac. (2d) 395].)" We consider this case determinative of the issues on this appeal.

Appellant cites the case of *Bank of Fruitvale* v. *Fidelity etc. Co.,* 35 Cal. App. 666 [170 Pac. 852], as authority for the proposition that a policy is not subject to revision on the ground that it does not cover a particular risk applied for where it is not shown that the insurer knew, or could have known that the insured would not examine the policy, or that the insurer, or its agent, took affirmative action to prevent such examination. This case was distinguished in the case of *Hercules Gasoline Co.* v. *Security Ins. Co., supra,* as being dissimilar upon the facts and a case where the court properly held under the circumstances that no fraud or mistake sufficient to authorize a reformation of the policy had been shown. It is similarly distinguishable from the case before us.

The complaint contained an offer to pay any difference in the amount of premium found to be due on account of the reformation. The court found that the rate which should have been charged was $18.75 and deducted the difference between this and the $10.50 paid from plaintiff's recovery. No point is made on the appeal in respect to this.

We have carefully read and considered all of the authorities cited by appellant and find none among them which in any way changes the conclusions we have reached. We deem it unnecessary to comment further upon them.

■ Appellant in its reply brief attempts for the first time on this appeal, and also, so far as appears from the record before us, for the first time during the case, to make the point that the complaint fails to state a cause of action. We are not obliged to consider a point so tardily made, but we may say that the complaint appears to us entirely sufficient. It sets forth the actual agreement of the parties, the mutual intention to have the policy conform thereto, the failure to properly describe the property and its uses through the error of the defendant, the fact of plaintiff's failure to discover the mistake until after the loss and every other element necessary to the statement of a cause of action for revision of the policy upon the ground of the mutual mistake of the parties.

The findings are supported by the evidence and a careful reading of the entire record has disclosed no error. The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.